This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

**v.**                                                         **No. A-1-CA-34548**

**JOE T. GARCIA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     Defendant Joe Garcia appeals from his convictions of four counts of criminal sexual penetration of a minor (CSPM) involving his two daughters. Defendant raises two arguments on appeal: (1) the evidence is insufficient to support the convictions involving his daughter HG because the only evidence supporting these convictions was the testimony of a nurse and mental health counselor, which were admitted in violation of the confrontation clause, and also because the statements were admitted into evidence without an instruction that they were not to be considered as substantive evidence of the CSPM charges at issue; and (2) the district court erred by: (a) admitting evidence of Defendant's legal pornography collection, (b) improperly limiting Defendant's use of Ms. Wigmore-Garcia's diary for impeachment purposes, and (c) considered in conjunction, the rulings give rise to cumulative error. We affirm. Because this is a memorandum opinion and the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the merits.

**BACKGROUND**

{2}     Defendant was indicted with fourteen counts related to the molestation of his twin five-year-old daughters, MG and HG, between January 2009 and July 2010. The jury convicted Defendant of four counts of CSPM premised on Defendant causing MG and HG to each engage in fellatio on two separate occasions. Defendant appeals.

2

**DISCUSSION**

**I.    Sufficiency of the Evidence Supporting the CSPM Convictions Involving HG**

**{3}**    Defendant argues that the evidence that HG accused Defendant of causing her to engage in fellatio on more than one occasion was testimonial and not subject to cross-examination, and therefore admitted into evidence in violation of Defendant's confrontation rights. In addition, Defendant contends that the evidence was not admitted for the truth of the matter asserted. Without this evidence, Defendant contends, no actual evidence was admitted against him regarding the two counts of CSPM involving HG, and as such, must be reversed. The State responds that "Defendant waived any confrontation issue and invited any error" related to the admission of HG's accusations against him. We agree.

**{4}**    At trial, the State called Nurse Jacqueline Belinski, a sexual assault nurse examiner (SANE nurse) employed at Christus St. Vincent Hospital, to testify. Nurse Belinski was recognized by the district court as an expert in "child sexual abuse examination" with no objection from Defendant. As a SANE nurse, Nurse Belinski received special training to perform forensic examinations when there is suspected child sexual abuse. In conducting a SANE examination, Nurse Belinski testified that she first obtains a "history" from the family, interviews the suspected victim, and then conducts a physical examination. Nurse Belinski testified that she conducted SANE examinations of MG and HG in September 2010.

{5}     Over Defendant's hearsay objection, Nurse Belinski was permitted to testify as to MG and HG's disclosures to her during their SANE interviews. In overruling Defendant's objection, the district court stated that:

> I am going to allow the questions to come in. Those questions have to be clearly not to prove the truth of the matter asserted and should stay away from the discussions like determinations that the law was broken, more medically based.
>
> Also, if [Defendant] . . . would like a curative instruction regarding this witness' testimony defining how the jury can interpret these statements, that they're not offered to prove the truth of the matter asserted but instead to describe and explain the totality of the SANE nurse examination or something like that[,] I will allow for that and we would discuss the exact language at the appropriate time outside of the presence of the jury. So if you want the instruction, please raise it as we're going over jury instructions.

Defendant agreed to this procedure. Nurse Belinski testified thereafter that HG told her during the SANE interview that Defendant had put his penis in her mouth on more than one occasion. Nurse Belinski stated that based on her experience and training, HG's disclosures were consistent with sexual abuse.

{6}     HG was called to testify. HG was able to testify that she understood the importance of telling the truth, as well as was able to identify Defendant in court. However, after approximately three hours of being unable to elicit any substantive testimony from HG , the parties argued about whether HG could testify to anything substantive. Based on the district court's concerns about HG's competency to testify and ability to articulate her recollections, the district court stated that it was

4

exercising its Rule 11-611 NMRA "powers and releas[ing HG] for today, giving the State an opportunity, if [the parties] think it would be productive to present her at another time during the State's case in chief." The parties did not object to the procedure, and HG was released. HG was not recalled.

{7}    The State later called Melissa Wood, a licensed mental health counselor, who provided therapy to MG and HG periodically between April 2010 and 2014. Outside of the presence of the jury, the district court ruled, over Defendant's hearsay and relevance objection, that Ms. Wood would be permitted to testify to statements made by MG and HG to her for the purposes of treatment and diagnosis related to the alleged sexual abuse. The district court reasoned that statements made for purpose of medical diagnosis and treatment are "inherently reliable" and that the statements that the State sought to elicit from Ms. Wood are relevant and "not substantially more prejudicial than probative[.]" Ms. Wood proceeded to testify that during her treatment of HG, HG told her that Defendant "told her to close her eyes and open her mouth and that he put his penis inside her mouth and she felt like vomiting[.]"

{8}    After the State rested, Defendant argued that Counts 1 and 2 of the indictment involving HG should be dismissed, arguing that the only evidence in support of the counts was improperly admitted through Nurse Belinski and Ms.

5

Wood either in violation of the confrontation clause or the rule against hearsay. Defendant contended that HG:

> for all intents and purposes, did not testify[,] which I believe . . . violates the confrontation clause. The information to sustain or prove Counts 1 and 2 have come from the SANE nurse, based on disclosures she alleges happened, that I could not cross-examine [HG] on, whether in fact she actually made these allegations to or statements to the SANE nurse, because she didn't testify. And they also come, to some extent, from Ms. Wood, which, again, are hearsay statements that I cannot test for truth or credibility because [HG] did not testify.

The district court denied Defendant's motion**,** ruling that admission of HG's statements accusing Defendant of the sexual abuse through Nurse Belinski and Ms. Wood did not violate the confrontation clause, and considered together, constituted sufficient admissible evidence to avoid a directed verdict. Defendant did not seek to have the jury instructed that Nurse Belinski and Ms. Wood's testimony concerning HG's statements to them should not be considered for the truth of the matter asserted.

**{9}** A "defendant can waive fundamental rights," including confrontation clause rights, which "may include an implied waiver by conduct." *State v. Herrera*, 2004-NMCA-015, ¶ 8, 135 N.M. 79, 84 P.3d 696; *see State v. Lucero*, 1986-NMCA-085, ¶¶ 12-17, 104 N.M. 587, 725 P.2d 266 (determining that by failing to object to challenged testimony on the basis of the confrontation clause, the defendant's confrontation clause claim was waived on appeal). Under the facts of this case, we conclude that by failing to object to the admission of HG's statements through

6

Nurse Belinski and Ms. Wood on confrontation grounds, as they were admitted, Defendant failed to preserve a confrontation clause argument for appeal. *See* Rule 11-103(A)(1) NMRA (requiring that in order to preserve a claim of error, a party must make a timely objection and state the specific ground for the objection, unless it is apparent from the context).

{10} Further, "[a]cquiescence in the admission of evidence . . . constitutes waiver of the issue on appeal[,]" *State v. Campos*, 1996-NMSC-043, ¶ 47, 122 N.M. 148, 921 P.2d 1266, and "[t]he doctrine of fundamental error cannot be invoked to remedy the defendant's own invited mistakes." *State v. Ortega*, 2014-NMSC-017, ¶ 34, 327 P.3d 1076 (internal quotation marks and citation omitted). A defendant likewise may not be heard to claim error with respect to complaints as to which the defendant declined the trial court's offer to cure. *See State v. Vialpando*, 1979-NMCA-083, ¶ 25, 93 N.M. 289, 599 P.2d 1086 (stating that "New Mexico has frequently held that a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which otherwise might result[;] and this court has ruled that an offer to admonish, even though declined, is sufficient to support denial of a motion for mistrial" (citations omitted)). Here, Defendant initially objected, on hearsay grounds, to the admission of HG's accusations against him that were admitted through Nurse Belinski and Ms. Wood. The district court determined that the statements were

admissible under Rule 11-803(4)(a), (b) NMRA (excluding from the hearsay rule "[a] statement that (a) is made for—and is reasonably pertinent to—medical diagnosis or treatment, and (b) describes medical history, past or present symptoms, pain, or sensations, their inception, or their general cause"). However, the district court also offered to limit the jury's consideration of the evidence if Defendant tendered an instruction at the close of evidence explaining that the jury should not consider HG's statements admitted through Nurse Belinski and Ms. Wood for the truth of the matter asserted. But no such instruction was tendered by Defendant. Under these circumstances, we conclude that Defendant acquiesced in the admission HG's accusations against him and will not be heard to claim error with respect to his complaint for which he declined the district court's offer to cure.

{11}     The jury instructions for Counts 1 and 2 provided, in pertinent part, that in order to find Defendant guilty of the crimes, the State was required to prove beyond a reasonable doubt that Defendant "caused [HG] to engage in fellatio" on two occasions. As we have already stated, Nurse Belinski testified that HG told her during the SANE interview that Defendant had put his penis in her mouth on more than one occasion. Nurse Belinski also testified that based on her experience and training that HG's disclosures and statements were consistent with sexual abuse. This evidence was corroborated by Ms. Wood, who testified that HG told her that

8

Defendant had "told [HG] to close her eyes and open her mouth and that he put his penis inside her mouth and she felt like vomiting[.]" Although admitted under an exception to the rule against hearsay, the jury properly considered this testimony as substantive evidence of the crimes charged in Counts 1 and 2. *See State v. Largo*, 2012-NMSC-015, ¶ 24, 278 P.3d 532 ("Hearsay consists of an out-of-court statement offered to prove the truth of the matter asserted, and is inadmissible as substantive evidence unless it falls within an exclusion or exception to the hearsay rule." (internal quotation marks and citation omitted)). This was evidence that Defendant caused HG to engage in fellatio as charged in Counts 1 and 2.

{12}    In light of our conclusions above—that no error occurred in the admission of HG's accusations against Defendant through the testimony of Nurse Belinski and Ms. Wood—we conclude that substantial admissible evidence supports the jury's verdict convicting Defendant of two counts of CSPM involving HG. *See State v. Carrillo*, 2017-NMSC-023, ¶ 42, 399 P.3d 367 ("In reviewing the sufficiency of evidence, [New Mexico courts] must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." (internal quotation marks and citation omitted)); *State v. Suazo*, 2017-NMSC-011, ¶ 32, 390 P.3d 674 (stating that the central consideration in a sufficiency of the evidence review is whether substantial direct or circumstantial evidence exists to support a verdict beyond a reasonable

9

doubt as to all essential elements of the crimes for which the defendant was convicted); *State v. Duttle*, 2017-NMCA-001, ¶ 18, 387 P.3d 885 (stating that in jury trials, "the jury instructions are the law of the case against which the sufficiency of the evidence supporting the jury's verdict is to be measured").

**II.    Claimed Evidentiary Errors**

**A.    Defendant's Pornography Collection**

{13}    Defendant argues that the district court erred in admitting evidence of Defendant's legal pornography collection. The State responds that Defendant waived any challenge to the admission of this evidence. We agree.

{14}    As stated above, "[a]cquiescence in the admission of evidence . . .constitutes waiver of the issue on appeal." *Campos*, 1996-NMSC-043, ¶ 47; *State v. Gutierrez*, 1977-NMSC-081, ¶ 7, 91 N.M. 54, 570 P.2d 592 (stating that a defendant may not complain on appeal that he was prejudiced by testimony which he allowed to be injected into the case); *State v. Anaya*, 2012-NMCA-094, ¶ 36, 287 P.3d 956 (stating that a party waives "an argument for error regarding the admission of evidence that the party introduced").

{15}    Here, Defendant did not object to the evidence of his legal pornography collection, but rather presented his own evidence of the collection and its discovery by Ms. Wigmore-Garcia, and used that evidence in support of his defense that Ms. Wigmore-Garcia fabricated the victims' accusations in order to obtain a divorce

10

from Defendant. Specifically, in his case-in-chief, Defendant took the stand and testified that Ms. Wigmore-Garcia found his collection of pornography, which led to a separation Defendant elicited testimony from Ms. Wigmore-Garcia during cross-examination and told the jury in his opening statement that Ms. Wigmore-Garcia's discovery of the pornography caused her to become "enraged" and to decide to end the marriage. Indeed, during a bench conference, defense counsel described how the pornography collection fit into the defense theory, stating that "I think that once [Ms. Wigmore-Garcia] had the opportunity to . . . all of a sudden start blaming [Defendant], because she was so upset with the pornography that this was her chance to get out of the marriage, to make these allegations fit and take off." In so acquiescing to admission of this evidence, Defendant waived the ability to challenge the evidence on appeal. *See State v. Duncan*, 1994-NMCA-030, ¶ 27, 117 N.M. 407, 872 P.2d 380 (determining that the defendant's failure to object to the admission of a letter that the defendant wrote to the victim waived the issue on appeal), *abrogated on other grounds by State v. Brule*, 1999-NMSC-026, ¶¶ 3-6, 127 N.M. 368, 981 P.2d 782; *see also State v. Attaway*, 1992-NMCA-043, ¶ 16, 114 N.M. 83, 835 P.2d 81 (determining that the defendant's apparent acquiescence in admission of evidence of certain drug incidents constituted a waiver on appeal of any claim that admission was error).

11

**{16}** We are further unpersuaded by Defendant's reliance on *State v. Romero*, 2006-NMCA-045, 139 N.M. 386, 133 P.3d 842, to assert that this evidentiary issue was not waived. In *Romero*, we held that the defendant did not waive a confrontation clause objection where the defendant objected to and "made clear throughout the proceedings that" the evidence at issue should not have come in and the defendant moved to exclude it. *Id.* ¶¶ 10, 16. In contrast, here, as stated above, Defendant failed to object to admission of the evidence of his pornography collection and rather used it to support his defense theory. *Romero* therefore does not apply and we decline to consider the argument further.

**B.    Ms. Wigmore-Garcia's Diary**

**{17}** Defendant argues that the district court erred in prohibiting proper inquiry into Ms. Wigmore-Garcia diary for impeachment purposes. Specifically, Defendant contends that he "was denied the opportunity to utilize extrinsic evidence from the diary to impeach her and challenge whether she was a credible witness" in accordance with Rule 11-613 NMRA. The State responds that "Defendant did not seek to use the diary as extrinsic evidence during Wigmore[-]Garcia's cross-examination, which is the error he claims on appeal." Defendant, the State asserts, was therefore "not aggrieved by any ruling of [the] district court ruling as to Wigmore[-]Garcia's cross-examination." We agree.

12

**{18}** A defendant "may not complain on appeal when the specific relief requested was granted." *State v. Trevino*, 1991-NMCA-085, ¶ 20, 113 N.M. 804, 833 P.2d 1170. Further, a defendant "may not predicate error on his own conduct." *State v. Gilbert*, 1982-NMCA-081, ¶ 31, 98 N.M 77, 644 P.2d 1066.

**{19}** Here, the State moved in limine to exclude Ms. Wigmore-Garcia's diary after learning of its existence for the first time when Defendant referenced it during opening statement, arguing that it was undisclosed in violation of Rule 5-502 NMRA ("Unless a shorter period of time is ordered by the court, within thirty (30) days after the date of arraignment or filing of a waiver of arraignment the defendant shall disclose or make available to the state the following: (1) books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody or control of the defendant, and which the defendant intends to introduce in evidence at trial[.]"). Defendant argued that the diary was not subject to disclosure because he did not intend to introduce the diary into evidence. Indeed, Defendant later stated that he did not seek to introduce the diary as evidence as a strategic defense choice. The district court ruled that the diary was excluded under Rule 5-502, subject to reconsideration.

**{20}** Prior to cross-examining Ms. Wigmore-Garcia, Defendant moved for the district court to reconsider its ruling excluding his use of the diary, requesting that he be permitted to reference the contents of the diary for the limited purpose of

13

impeaching Ms. Wigmore-Garcia, under Rule 11-613(A) (stating that when examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness, but the party must, on request, show it or disclose its contents to an adverse party's attorney). Defendant continually reiterated that he did not intend to introduce the diary into evidence. Specifically, Defendant requested only that he be permitted to ask Ms. Wigmore-Garcia whether she wrote in her diary that: (1) she was repulsed by Defendant and did not want to have sex with him; and (2) she was in love with her doctor. The district court granted Defendant's motion, ruling that under Rule 11-613 and given:

> the State's objection being disclosure, [the diary] is not subject to disclosure pursuant to [Rule] 5-502, and with [Defendant] having a good-faith basis for asking the questions, . . . may ask the questions. [Defendant] cannot show the [diary], she can't waive it in the air and say, "Didn't you say in your diary this?" She can ask questions, verbal inquiry only, not demonstrative, verbal inquiry and will have to live with the answers given. She cannot then say, "Well, I've got it right here and it says the following:" That's the way [Rule] 613 . . . reads and that's the way the [district c]ourt will apply.

Defendant did not object to this procedure and proceeded to ask Ms. Wigmore-Garcia the proffered questions, which she denied. Under these circumstances, in which Defendant: (1) as a matter of trial strategy, did not disclose the diary to the State in accordance with Rule 5-502; (2) represented repeatedly to the district court that he did not intend to introduce the diary into evidence; and (3) after being granted his requested relief, cross-examined Ms. Wigmore-Garcia concerning the

14

contents of the diary consistent with the district court's ruling, waived any claim of error in regard to the district court's rulings concerning his proposed use of the diary to impeach Ms. Wigmore-Garcia. *See State v. Taylor*, 1986-NMCA-011, ¶ 13, 104 N.M. 88, 717 P.2d 64 (determining that the defendant, who expressly conceded at the hearing on motion in limine that Rule 11-609(A)(2) NMRA was inapplicable to question of the admissibility of a prior misdemeanor conviction of a prosecution witness, was precluded from alleging error on grounds of the same rule on appeal).

{21} Additionally, Defendant's reliance upon *State v. Gomez*, 2001-NMCA-080, ¶ 14, 131 N.M. 118, 33 P.3d 669 is unavailing. In *Gomez*, the district court prohibited the defendant from introducing a safehouse interview of the victim as extrinsic evidence to impeach the victim's videotaped testimony, ruling that the victim was unavailable to deny or explain the alleged inconsistencies and because permitting the impeachment would impermissibly deprive the State of the opportunity to rehabilitate its witness. *Id.* ¶¶ 3-6. Reasoning that "[t]he record does not reflect any showing by the State that it could not have questioned [the v]ictim further at the time of the trial video. Nor does the record reflect any showing by the State that it could not have recalled [the v]ictim during the trial for further questioning either in person or in another videotaped deposition[,]" we concluded that the district court erred in its exclusion of the safehouse interview as extrinsic

15

evidence. *Id.* ¶¶ 16, 18. In contrast, here, the district court's ruling limiting Defendant's use of the diary in his cross-examination of Ms. Wigmore-Garcia to questioning her concerning certain entries therein was premised on its exclusion of the diary from evidence for violation of Rule 5-502 and Defendant's concessions that he did not intend, as a matter of trial strategy, to introduce the diary into evidence. *Gomez*, therefore, does not apply and we decline to consider the argument further.

**C.     Cumulative Error**

{22}     Concluding that no evidentiary error arose from the admission of evidence concerning Defendant's pornography collection or from the district court's rulings concerning Defendant's impeachment of Ms. Wigmore-Garcia through the use of her diary, we conclude that no cumulative error occurred. *See State v. Woodward*, 1995-NMSC-074, ¶ 59, 121 N.M. 1, 908 P.2d 231 ("The doctrine of cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." (internal quotation marks and citation omitted)), *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935; *see also State v. Saiz*, 2008-NMSC-048, ¶ 66, 144 N.M. 663, 191 P.3d 521 ("[W]here there is no error to accumulate, there can be no cumulative error."), *abrogated on*

16

*other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783.

**CONCLUSION**

{23}    The judgment and sentence of the district court is affirmed.

{24}    **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**EMIL J. KIEHNE, Judge**

17